IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Phillip S. Figa

Civil Action No. 05-cv-01439-PSF-MJW

GOODWILL INDUSTRIAL SERVICES CORPORATION, a Colorado nonprofit
corporation,

      Plaintiff,

v.

COLORADO DIVISION OF VOCATIONAL REHABILITATION, a Colorado
governmental agency;
KEVAN WORLEY, an individual;
BLACKSTONE CONSULTING, INC., a California corporation; and
SERVICESOURCE, INC., a Virginia nonprofit corporation,

      Defendants,

v.

COMMITTEE FOR PURCHASE FROM PEOPLE WHO ARE BLIND OR
SEVERELY DISABLED, an agency of the United States government; and
THE UNITED STATES OF AMERICA,

      Defendants-Intervenors.

---

## ORDER ON PENDING MOTIONS

---

      This matter comes before the Court on the motion of Defendant-Intervenor

Committee for Purchase from People Who Are Blind or Severely Disabled

("Committee") to dismiss the First Amended Complaint pursuant to F.R.Civ.P. 12(b(1)

(Dkt. # 78), and on the motion of the Committee to stay proceedings, or in the

alternative, to strike plaintiff's Refiled Motion for Summary Judgment (Dkt. # 81),

as well as a motion filed by Defendants Worley and Blackstone Consulting, Inc.

seeking the same relief (Dkt. # 84).

Also pending before the Court is Plaintiff's Refiled Motion for Summary

Judgment (Dkt. # 66), filed on October 31, 2005.  The Court has received responses to

the plaintiff's Refiled Motion for Summary Judgment from Defendant Colorado Division

of Vocational Rehabilitation ("DVR") (Dkt. # 75), filed November 10, 2005, from

Defendant ServiceSource, Inc. (Dkt. # 80), filed November 21, 2005, and from

Defendants Worley and Blackstone Consulting, Inc. (Dkt. #  82), also filed November

21, 2005.  The Court has not received a response to that motion from Intervenor

Committee as it has moved to stay proceedings pending decision of its motion to

dismiss.

On November 25, 2005, plaintiff filed a reply brief in support of its Refiled Motion

for Summary Judgment (Dkt. # 85) arguing in part against the Committee's motion to

dismiss.  On December 8, 2005, plaintiff filed its opposition to the Committee's Motion

to Dismiss (Dkt. # 86).  On December 12, 2005, plaintiff filed its opposition to the

Motion to Stay (Dkt. # 87).  The Committee (along with the United States) filed a reply

in support of its motion on December 30, 2005.  The matter is now ripe for

determination.

**BACKGROUND**

In summarizing the background events the Court will liberally borrow from the

facts as described by Magistrate Judge Boland in his order of July 28, 2005, found at

378 F. Supp. 2d 1290 (D. Colo. 2005), entered in a prior related case filed in this district, as well as from this Court's opinion in this case issued on August 3, 2005, found at 2005 WL 1847151 (D. Colo., Aug. 3, 2005), which granted the Committee's motion to dissolve a temporary restraining order.

Defendant Committee is an agency of the United States established by the Javits-Wagner-O'Day ("JWOD") Act, 41 U.S.C. §§ 46-48c.  "The primary objective of the Committee is to provide training and employment opportunities for persons who are blind or have severe disabilities."  *NISH v. Cohen*, 247 F.3d 197, 201 (4th Cir. 2001). The mission of the Committee is to create these employment opportunities through the federal procurement process by means of the JWOD Program.  The Committee carries out its mission by requiring that certain products and services purchased by federal government agencies be procured from nonprofit agencies that employ blind or other severely disabled individuals.  41 U.S.C. § 48.  Under the JWOD Act, the Committee is charged with creating and maintaining a "procurement list" of goods or services offered for sale by any qualifying nonprofit agency for the blind or those otherwise severely handicapped. 41 U.S.C. § 47(a).

Nonprofit agencies must meet and maintain the legal qualifications set forth in 41 U.S.C. §§ 48b(3)-(4) and the regulatory criteria set forth at 41 C.F.R. §§ 51-4.2 and 51-4.3 in order to qualify for the JWOD Program.  Nonprofit agencies are selected for a specific product or service by the designated central nonprofit agency, in this case NISH, (formerly the National Industries for the Severely Handicapped) as authorized by 41 U.S.C. § 47(c) and 41 C.F.R. §§ 51-3.1 and 51-3.2.  Plaintiff Goodwill Industrial

3

Services Corporation ("Goodwill") claims to have been approved as a qualified nonprofit agency under the JWOD Act.  Amended Complaint, ¶ 17.

On May 23, 2005, the military facility at Fort Carson, Colorado awarded a contract for full food services (the "Prime Contract") to Defendants DVR, Kevan Worley, and Blackstone Consulting, Inc., effective June 1, 2005.  Amended Complaint, ¶ 23. On May 31, 2005, DVR, Worley and Blackstone Consulting, Inc., entered into a subcontract with Goodwill for the provision of dining facility attendant services at Fort Carson (the "Subcontract").[1]  Amended Complaint, ¶ 24.  The Subcontract, attached as Exhibit 1 to the original complaint in this case, has an effective date of June 1, 2005.

On June 24, 2005, the Committee issued a communication captioned "Notice of Change to Procurement List–Transfer of Responsibility."  Exhibit 1 to Amended Complaint.  The Notice states that dining facility attendant services at Fort Carson are transferred from Goodwill to Defendant ServiceSource, Inc., effective August 1, 2005. *Id.*

**PRIOR PROCEEDINGS**

Goodwill, asserting that the Committee did not have the authority to cancel or otherwise interfere with the Subcontract, filed a complaint on July 11, 2005 in the prior federal case in this district seeking an injunction enjoining the Committee from cancelling or otherwise interfering with the Subcontract.  In that case, Civil Action No. 05-cv-1275-MJK-BNB, Magistrate Judge Boland had authority to hold a hearing on the

---

[1]   Attendant services at the Fort Carson military troop dining facilities were added to the JWOD Procurement List in September 1998.

4

motion for preliminary injunction for July 28, 2005.  However, on July 27, 2005, the

Magistrate Judge vacated the hearing and the following day he entered the order

referenced above, finding that this district lacked subject matter jurisdiction to hear the

case against the Committee and therefore denied the motion for preliminary injunction.

(That case did not involve a claim under the Administrative Procedure Act ("APA"),

5 U.S.C. § 701, *et seq.*)

On July 28, 2005, plaintiff filed a case in the state district court in Colorado

Springs, Colorado, which omitted naming the Committee as a defendant. There plaintiff

sought a temporary restraining order against the other named defendants to enjoin the

termination of the Subcontract.  On July 29, 2005, the state district judge granted the

temporary restraining order *ex parte*.  On the same date, Defendant DVR filed a notice

of removal in the state case, having the effect of removing the case to this federal

district court where it was assigned to the undersigned judge.

Also on July 29, 2005, Defendant Committee moved to intervene in this case

and to dissolve the temporary restraining order.  Shortly thereafter, Plaintiff Goodwill

moved to remand the case to state court.  On August 3, 2005, this Court granted the

Committee's motion to intervene, denied the motion to remand, and dissolved the

temporary restraining order in the above-referenced published Order.

On August 16, 2005, Plaintiff Goodwill moved to dismiss the previous case filed

in this district and the motion was granted by Judge Krieger on August 17, 2005.

On August 30, 2005, Plaintiff Goodwill filed a motion for summary judgment

in this case, arguing essentially that the Defendant Committee had no authority to

5

terminate the Subcontract with it.  On September 30, 2005, Defendant Committee filed

a motion to dismiss the plaintiff's complaint, arguing that the case was moot since the

Committee had terminated plaintiff as a subcontractor on August 4, 2005 (after the

dissolution of the TRO), and that the Court lacked subject matter jurisdiction over this

case because the Committee had not waived sovereign immunity.  The Committee also

filed on the same day a motion to stay proceedings pending a ruling on its motion to

dismiss.

      After full briefing on the motion to dismiss and the motion to stay, this Court held

a hearing on October 19, 2005 on the Committee's motions.  The Court denied the

motion to dismiss, finding that the claims asserted by the plaintiff were not moot nor

was plaintiff barred from filing suit against the Committee by the doctrine of sovereign

immunity, as there were allegations in the complaint providing a potential basis to

review the Committee's determination under 28 U.S.C. § 1491(b) or under the APA.

However, due to the uncertainty of plaintiff's claims in its state court complaint, the

Court also directed the plaintiff to file an amended complaint setting forth a more

express basis for its assertion of this Court's jurisdiction.  The Court denied the

defendant's motion to stay.  (By Supplemental Order dated October 21, 2005, this

Court *sua sponte* withdrew that portion of its October 19, 2005 ruling to the extent it

was predicated upon 28 U.S.C. § 1491(b)(1).)

      On October 31, 2005, plaintiff filed its Amended Complaint, expressly asserting

jurisdiction in this Court pursuant to the APA (Amended Complaint, ¶ 11) and alleging

that the Committee's decision is subject to judicial review under 5 U.S.C. § 702

(Amended Complaint ¶ 12).  Plaintiff requests a declaratory judgment that the

Subcontract "is a valid and subsisting contract," that the notice sent by the Committee

is null and void, and permanently enjoining defendants, including specifically an agent

of the Committee, from purporting to cancel or otherwise interfering with the

Subcontract (Amended Complaint at 10).

**THE CURRENT MOTION TO DISMISS AND PLAINTIFF'S RESPONSE**

The Committee's current motion to dismiss (Dkt. # 78), argues that plaintiff's

Amended Complaint must be dismissed under Rule 12(b)(1), F.R.Civ.P., for lack of

subject matter jurisdiction because there is no waiver of sovereign immunity under the

circumstances of this case.  Specifically, the Committee argues that despite the fact

that the APA provides a general waiver of sovereign immunity for suits against

government agencies, this lawsuit falls under an exception to the APA, found at

5 U.S.C. § 701(a)(2), which precludes judicial review of an agency action when that

action is "committed to agency discretion by law."  (Motion at 2).  The Committee first

argues that its determination in this case is not subject to judicial review because this

case may present one of those rare instances where a statute is drawn in such broad

terms that there is no law to apply.  Defendant's Motion at 9, citing to *Citizens to*

*Preserve Overton Park, Inc., v. Volpe*, 401 U.S. 402, 410 (1971), *overruled on other*

*grounds, Califano v. Sanders*, 430 U.S. 99, 105 (1977).  Alternatively, the Committee

argues, whether a particular statute precludes judicial review under the APA is

determined not only from its express language, but also from the structure of the

statutory scheme, its objectives, its legislative history and nature of the administrative

7

action involved, citing to the Tenth Circuit decision in *American Bank, N.A. v. Clarke,* 933 F.2d 899, 902 (10th Cir. 1991).   *Id.* at 9-10.   The Committee acknowledges, as the Tenth Circuit has expressly held,   that the exception to judicial review found in § 701 of the APA is a "narrow exception to the otherwise strong presumption that agency actions are reviewable." *Payton v. United States Dep't. of Agriculture,* 337 F.3d 1163, 1168 (10th Cir. 2003).   *Id.* at 9.

The Committee argues that under JWOD, specifically 41 U.S.C. § 48, it is charged with making sure that any government entity that intends to procure any commodity or service from the procurement list procures the commodity from a "qualified nonprofit agency." (Motion at 10).   Pursuant to such charge, JWOD empowers the Committee to "make rules and regulations regarding . . . such matters as may be necessary to carry out the purposes of sections 46 to 48c" of the Act, 41 U.S.C. § 47(d)(1).   Thus, the Committee argues, "it is necessary to look to the Committee's regulations to determine how the Committee carries out its responsibility of making sure that federal agencies procure services from qualified nonprofit agencies." (Motion at 10).

The Committee further asserts that the regulation that permits it to determine which JWOD nonprofit agency will be authorized to furnish services listed on the Procurement List is found at 41 C.F.R. § 51-2.2(b), which provides, in pertinent part, as follows:

> The Committee is responsible for carrying out the following functions in support of its mission of providing employment and training opportunities for persons who

are blind or have other severe disabilities and, whenever possible, preparing those individuals to engage in competitive employment:

(a)   Establish rules, regulations, and policies to assure effective implementation of the JWOD Act.

(b)   Determine which commodities and services procured by the Federal Government are suitable to be furnished by qualified nonprofit agencies employing persons who are blind or have other severe disabilities and add those items to the Committee's Procurement List. Publish notices of addition to the Procurement List in the Federal Register. Disseminate information on Procurement List items to Federal agencies.  Delete items no longer suitable to be furnished by nonprofit agencies.  *Authorize and deauthorize central nonprofit agencies and nonprofit agencies to accept orders from contracting activities for the furnishing of specific commodities and services on the Procurement List.*

41 C.F.R. § 51-2.2(b) (emphasis added).

The Committee, emphasizing the last sentence of sub-paragraph 2 of this regulation quoted above, contends that it empowers the Committee "to authorize one nonprofit agency to provide a service listed on the Procurement List instead of another nonprofit agency." (Motion at 11).  Therefore, concludes the Committee, it was empowered to deauthorize Goodwill from furnishing dining facility services at Ft. Carson and to authorize ServiceSource to provide that service (*id.*).

The Committee maintains that this Court must determine whether the Committee's power to make this determination is "discretionary" and therefore, not subject to review under § 701(a)(2) the APA.  Although the Committee concedes that courts have reviewed instances where the Committee is accused of violating the APA by exceeding its statutory or regulatory authority, it contends that none of those cases

9

have reviewed the Committee's "power to authorize or de-authorize a JWOD nonprofit agency from furnishing a service listed on the JWOD Procurement List (*i.e.*, the Committee's power to select *among* the various qualified JWOD nonprofit agencies and determine which nonprofit agency will perform a particular contract.)."  (Motion at 11-12, emphasis in original).  The Committee states that this case is therefore, "a case of first impression," and there is no "past precedent" to assist a determination as to whether the Committee's power under § 51-2.2(b) is "committed to the agency's discretion by law." *Id.*  Instead, argues the Committee, the Court must look to the factors articulated in *Clarke, supra*, namely the structure of the statutory scheme, its objectives, its legislative history and nature of the administrative action involved. *Id.*

Plaintiff argues that the Committee, which as noted above intervened in this case, has previously taken a contrary position, *i.e.* that the scope of the Committee's authority is "an APA claim," citing to statements made by the Committee's counsel in open court on October 19, 2005 (Plaintiff's Opposition, Dkt. # 86, at 2-3).  As an APA claim, the exercise of authority is subject to review, asserts plaintiff.  Moreover, plaintiff contends, there is no statute that gives the Committee authority to terminate executory contracts to which it is not a party, "let alone boundless discretion to do so." (Plaintiff's Reply to Motion for Stay, Dkt. # 85, at 3).  Thus, plaintiff submits, 5 U.S.C. § 701(a)(2), has no application here and thus the Motion to Dismiss should be denied. *Id.* More-over, plaintiff argues, because the Committee has no such authority, its actions in this matter were ineffective to terminate the Subcontract and thus plaintiff claims it is entitled to summary judgment on its claims. *Id.* at 5.

10

**ANALYSIS**

As Defendant Committee suggests, the Court starts with the language of the statute and regulations which the Committee asserts provide the unfettered discretion it claims to have.

Title 41 U.S.C. § 47 sets forth the essential duties and powers of the Committee that include the establishment and publication in the Federal Register of a "procurement list" of commodities produced by qualified nonprofit agencies and "the services provided by any such agency" deemed by the Committee suitable for procurement by the government with the purpose of advancing employment of the blind or otherwise handicapped. 41 U.S.C. § 47(a)(1). The statute also provides that the Committee may, by rule made in accordance with the APA, "add to and remove from the procurement list commodities so produced and services so provided." 41 U.S.C. § 47(a)(2).

If it were the Committee's position that the Notice of June 24, 2005 was intended to be an action to delete an item from the procurement list, there would be no question that the Committee had the power to take such action under the statute. A review of the Federal Register reflects that the Committee regularly adds to, and deletes from, the procurement list, a vast range of commodities and services. However, to accomplish a deletion from the procurement list there are a number of procedural steps the Committee must take, not the least of which is compliance with the rule-making procedures established in the APA at 5 U.S.C. § 553. *See* 41 U.S.C. § 47(a)(2). Those procedures include the familiar steps of publication of the proposed rule making

in the Federal Register, a comment period, and publication of the final rule.  Nothing submitted by the Committee in the instant case suggests that it followed such procedures in connection with the issuance of the June 24, 2005 Notice.

Moreover, there is no question that decisions by the Committee to add or delete items from the procurement list are subject to review by courts for compliance with the APA requirements.  *See e.g. HLI Lordship Indus., Inc. v. Committee for Purchase from the Blind and Other Severely Handicapped,* 791 F.2d 1136, 1140 (4th Cir. 1986) and other cases cited in Defendant Committee's Motion at 12, n.3.  Thus, it does not appear that the Committee suggests that the Court should construe the June 24, 2005 Notice as a statutorily authorized "deletion" from the procurement list.

The statute further provides that the Committee "shall designate a central nonprofit agency or agencies to facilitate the distribution (by direct allocation, subcontract, or any other means) of orders of the Government for commodities and services on the procurement list among qualified nonprofit agencies . . . ."  41 U.S.C. § 47(c).  By regulation, 41 C.F.R. § 51-3.1(b), the Committee designated NISH as the central nonprofit agency to represent nonprofit agencies employing persons with severe disabilities other than blindness, such as Plaintiff Goodwill.  Insofar as the dining facilities contract at Ft. Carson was involved, there is no dispute that the designated central nonprofit agency is NISH.  There is also no issue in this case relating to any action by the Committee to "authorize or deauthorize" NISH.

Title 41 U.S.C. § 48b sets forth several definitions of terms used in the statute. A "qualified nonprofit agency for other severely handicapped" is defined generally in

12

the statute at 41 U.S.C. § 48b(4).  The statute also authorizes the Committee to make

rules and regulations generally related to carrying out the purposes of the statutory

scheme.  41 U.S.C. § 47(d).  The Committee, pursuant to its statutory charge, has

promulgated a series of regulations that appear in Title 41, Section 51 of the Code

of Federal Regulations.

In order to participate in the JWOD program, a nonprofit agency must meet the

initial qualification criteria for a nonprofit agency set forth in 41 C.F.R. § 51-4.2(a),

requiring primarily submission of corporate documents.  The submitted documents are

reviewed by the Committee, and if they are acceptable, the Committee notifies the

central nonprofit organization that it has "verified" the nonprofit status of the agency.

41 C.F.R. § 51-4.2(b).  Thereafter, the participating nonprofit agency is represented by

the central nonprofit agency assigned by the Committee (41 C.F.R. § 51-4.1) which,

as noted above, is NISH in the case of plaintiff.  There appears to be no dispute that

Plaintiff Goodwill has been represented by NISH in connection with the Subcontract,

and therefore its qualifications presumably had been reviewed and verified by the

Committee under 41 C.F.R. § 51-4.2(b).

Once the nonprofit agency has its status verified, and it is represented by

NISH under the regulatory scheme, it is the responsibility of NISH to "represent its

participating nonprofit agencies in dealing with the Committee under JWOD," as well as

a number of other responsibilities.  41 C.F.R. § 51-3.2(a), *et seq.*  It is the responsibility

of NISH to recommend to the Committee "suitable commodities or services for

procurement from its nonprofit agencies."  41 C.F.R. § 51-3.2(d).  It is also the

responsibility of NISH to distribute, within the policy guidelines of the Committee, "orders from Government activities among its nonprofit agencies." 41 C.F.R. § 51-3.2(f). Moreover, NISH is charged with allocating orders equitably among its participating nonprofit agencies. 41 C.F.R. § 51-3.2(g). NISH is further directed to ensure contract compliance by the nonprofit agencies in furnishing a commodity or service, as well as compliance with the JWOD Act and appropriate regulations. 41 C.F.R. § 51-3.2(h) and (j). Finally, NISH is expressly required to enter into contracts with federal contracting agencies for the furnishing of commodities or services provided by its nonprofit agencies. 41 C.F.R. § 51-3.2(k).

Thus, it appears that once a nonprofit agency such as Goodwill is reviewed and verified by the Committee as a "qualified" nonprofit agency within the statutory definition, the regulations delegate to NISH, and not the Committee, the authority to allocate contracts to the nonprofit agencies under its domain, and to supervise performance of those contracts.[2] Although not specifically demonstrated by any document in the record now before the Court, it appears that NISH at some time recommended Plaintiff Goodwill as suitable for the provisions of services listed on

---

[2]   In *Ballerina Pen Co. v. Kunzig,* 433 F.2d 1204 (D.C. Cir. 1970), the court described the division of responsibility between the Committee and the central nonprofit agency, stating that it was the latter entity which "distributes orders received from the Government for items on the Schedule [procurement list] among non-profits workshops [participating nonprofit agencies] . . . ." 433 F.2d at 1205.

14

the procurement list.  Hence, plaintiff became a subcontractor for the Ft. Carson dining

facilities services in April 1999.[3]

As noted above, the regulation on which the Committee relies for its exercise

of power to issue the Notice of June 24, 2005 is 41 C.F.R. § 51-2.2(b), giving the

Committee the responsibility to:

> Authorize and deauthorize central nonprofit agencies and
> nonprofit agencies to accept orders from contracting
> activities for the furnishing of specific commodities and
> services on the Procurement List.

The Court has found no statute or regulation expressly defining or explaining

the meaning of the phrase  "authorize" or  "deauthorize" a nonprofit agency "to accept

orders from contracting activities," in the manner its meaning is urged by the Committee

in this case.

Subsection (b) of the regulation in which the above sentence is found, generally

addresses determination of commodities and services "suitable" to be furnished by

nonprofit agencies and adding those items to the procurement list.  However, as noted

above, the Notice of June 24, 2005, is not urged to be, nor can it reasonably

be construed to be, an exercise of the Committee's power to delete an item from

the procurement list.[4]

---

[3]   *See* Affidavit of Louis Bartalot, ("Bartalot Affidavit") at ¶ 6, attached as Exhibit A-1 to Committee's Opposition to Motion for Preliminary Injunction in Case No. 05-cv-1275-MJK-BNB (D. Colo.).

[4]   The Court notes that the Notice contains the heading: "Notice of Change to Procure-ment List – Transfer of Responsibility."  However, if this Notice were argued to be a change to the procurement list, it would certainly be subject to judicial review as explained above.  The Court has also reviewed Federal Register notices published during the relevant period of time and has found none that publish this change of responsibility.

Moreover, as also noted above, the power of the Committee to "verify" an agency as a qualified nonprofit agency is found elsewhere in the regulations, and the Notice of June 24, 2005 does not purport to revoke the verification of Goodwill's qualification as a "qualifying nonprofit agency."

Furthermore, the Notice of June 24, 2005, makes no reference to NISH as having made a determination under its authority and responsibility to reallocate a contract among its participating nonprofit agencies, or having exercised its responsibility to ensure contract compliance, or even having determined to enter into a contract with the replacement nonprofit entity, ServiceSource, Inc.  Also, as pointed out by plaintiff, the Notice itself cites no statutory or regulatory authority to support its issuance.  In fact, the language used in the Notice is not language of "deauthorization" in accordance with the phraseology that appears in the regulation, but rather simply states that it "transfers responsibility" from plaintiff to ServiceSource.  In addition, the Defendant Committee has cited no cases to this Court interpreting the meaning of the language of the regulation on which it relies, and the Court has found no such cases.

Thus, while it may be true, as the Committee argues, that there are no criteria to be applied by a court in reviewing an action by the Committee to "deauthorize" a nonprofit agency from accepting orders from contracting activities because the meaning of the provision in the regulation is undefined, there is correspondingly a lack of evidence that the action taken by the Committee on June 24, 2005 comes within the power of the Committee to "deauthorize" under the regulation cited, or is otherwise supported by some power which the Committee rightfully exercises.  If, as the plaintiff

16

argues, the Committee had no power to take the action it took by Notice dated June 24,

2005, namely to "transfer responsibility" from one qualified nonprofit agency to another,

then the action cannot be deemed a "discretionary" action by a government agency,

and if anything is unauthorized or an arbitrary and capricious action subject to review

under the APA.

The position taken by the Committee in support of its present motion to dismiss

at least in some respects is inconsistent with the position it took before Magistrate

Judge Boland when it opposed plaintiff's motion for a preliminary injunction in the prior

related case, as well as matters suggested in the Committee's reply brief.  In the case

before Magistrate Judge Boland, the Committee presented several affidavits

suggesting that the transfer of the Subcontract from Plaintiff Goodwill to ServiceSource

was due to problems with the performance rendered by plaintiff.  *See e.g.* the Bartalot

Affidavit at ¶¶ 7-12, and affidavits of Sandra Sieber and Colonel Michael Resty, Jr.,

attached respectively as Exhibits A-2 and A-4 to Defendant's Opposition to Motion for

Preliminary Injunction in Case No. 05-cv-1275-MJK-BNB.  The Committee does, in

its recently filed reply brief for the first time in this case, suggest that Ft. Carson's

problems with Goodwill's performance of dining room facility services was the reason

that the Committee "stepped in to resolve the dispute" leading to the termination and

transfer of Goodwill's sub-contract under 41 C.F.R. § 51-6.15 (Defendant's Reply Brief

at 10-11).

If indeed, the basis for the transfer of the contract from plaintiff was alleged

performance problems, there would be criteria for this Court to review to determine

whether the Committee's decision was supported by substantial evidence on the record as a whole as required under the APA, and traditional judicial review would be possible.  Moreover, the regulation only permits the Committee to "step in" when the "disputes" to which the regulation refers  "cannot be resolved" by the parties and is "referred to the Committee."  41 C.F.R. § 51-6.15.  On the present record it is not clear what dispute was at issue, whether it was referred to the Committee or what criteria were applied by the Committee to resolve the dispute.

As plaintiff argues, the regulations provide criteria that the nonprofit agencies must continue to meet in order to maintain eligibility under JWOD, for example, the requirement that they furnish commodities in strict compliance with the government orders, 41 C.F.R. § 51-4.3(b)(1).  The regulations also provide a mechanism to investigate and resolve violations of regulations by nonprofit agencies, which may result in termination of the nonprofit agency by the Committee.  *See* 41 C.F.R. § 51-4.5.[5]  The regulations also provide a mechanism, as the Committee acknowledges, for dispute resolution short of termination incases of noncompliance by a nonprofit agency. *See* 41 C.F.R. §§ 51-6.5 and 6.15.  But there is no evidence here that such procedures for dispute resolution or termination were followed or attempted in the instant case, or

---

[5]   The regulation found at 41 C.F.R. § 51-4.5 does authorize the Committee to terminate "the nonprofit agency's eligibility to participate in the JWOD Program."  That regulation, however, does not refer to terminating a nonprofit agency's particular contract. In any event, in its reply the Committee asserts that "Goodwill has not been found to lack the necessary qualifications to participate in the JWOD program as a whole.  Indeed, Goodwill continues to be a participating JWOD nonprofit agency."  Reply Brief at 9.

any argument that such procedures, if followed or attempted, are insulated from judicial review.

Therefore, on the basis of the record before it, this Court cannot conclude that the Committee has overcome the strong presumption in favor of judicial review of agency action, or that this matter is one of those "rare cases" excepted from judicial review under 5 U.S.C. § 701(a)(2) because there is either "no law to apply" or because the pertinent statutes or regulations preclude review of the administrative action taken by the Committee on June 24, 2005.  Furthermore, the Court cannot find that unwaived sovereign immunity precludes plaintiff's claims against the Committee so as to deprive this Court of subject matter jurisdiction over the Amended Complaint.

**CONCLUSION**

For these reasons, the Defendant Committee's Motion to Dismiss (Dkt. # 78) is DENIED.

The Defendant Committee's Motion to Stay Proceedings, or in the alternative, to Strike Plaintiff's Refiled Motion for Summary Judgment (Dkt. # 81) is DENIED.

The Motion to Stay Proceedings filed by Defendants Worley and Blackstone Consulting, Inc (Dkt. # 84) is DENIED.

This case is set for a status and scheduling conference for **January 26, 2006, at 1:00 p.m.**  At least ten days prior to the scheduling conference, the parties shall confer and discuss the following matters to be addressed at the status and scheduling conference, attempt to reach agreement on these issues and file a joint statement as to their respective positions:

19

(a)     the standard of review to be applied by this Court under the APA;

(b)     what documents comprise the administrative record and how much time do the parties need to compile and submit the administrative record?

(c)     whether there is a need for discovery; if so, as to what issues?

(d)     the timing for any further briefing;

(e)     whether there is a need for a trial;

(f)     any other issues enumerated in F.R.Civ.P. 16(c).

If and when a response is due by the Defendant Committee to Plaintiff's Refiled Motion for Summary Judgment will be decided at the status and scheduling conference.

DATED: January 9, 2006

BY THE COURT:

*s/ Phillip S. Figa*

_____
Phillip S. Figa
United States District Judge