IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Phillip S. Figa

Civil Action No. 05-cv-01439-PSF-MJW

GOODWILL INDUSTRIAL SERVICES CORPORATION, a Colorado nonprofit corporation,

    Plaintiff,

v.

COLORADO DIVISION OF VOCATIONAL REHABILITATION, a Colorado governmental agency;
KEVAN WORLEY, an individual;
BLACKSTONE CONSULTING, INC., a California corporation; and
SERVICESOURCE, INC., a Virginia nonprofit corporation,

    Defendants,

v.

COMMITTEE FOR PURCHASE FROM PEOPLE WHO ARE BLIND OR
SEVERELY DISABLED, an agency of the United States government; and
THE UNITED STATES OF AMERICA,

    Defendants-Intervenors.

## ORDER ON MOTION FOR RECONSIDERATION

This matter comes before the Court on the motion (Dkt. # 95) of Defendant-Intervenor Committee for Purchase from People Who Are Blind or Severely Disabled ("Committee") requesting reconsideration of this Court's Order of January 9, 2006 ("Order"). In that Order, the Court denied the Committee's motion to dismiss the First Amended Complaint pursuant to F.R.Civ.P. 12(b)(1).

The Committee now urges the Court to reconsider its decision, arguing that the Court "erred in finding, *sua sponte*, that NISH is vested with the authority to determine

which nonprofit agency shall perform a particular service listed on the Procurement List." (Motion for Reconsideration at 1).  For the reasons set forth below, the Court declines to reconsider its Order.

First, the Court disagrees with the Committee's argument as to the role of NISH based on the Court's plain reading of the regulations cited in its Order and in the Committee's motion.  As the Court stated in its Order, it reads 41 C.F.R. § 51-3.2 to set forth a list of responsibilities to be exercised by the central nonprofit agency, in this case NISH, under the JWOD Program.  The Court enumerated several of those duties in its Order at pages 13-14, and restates here the one duty that seems pertinent to the arguments made now by the Committee.  Regulation 41 C.F.R. § 51-3.2(f) provides NISH with the responsibility to "[d]istribute within the policy guidelines of the Committee (by direct allocation, subcontract, or any other means) orders from Government activities among its nonprofit agencies."  Based on its plain meaning, the Court understands this regulation to delegate to NISH the responsibility to distribute orders from Government activities (such as Ft. Carson) among its nonprofit agencies (such as plaintiff), albeit consistent with "policy guidelines" of the Committee.

Conversely, the Court does not read the regulation now urged by the Committee to deprive NISH of this role.  The Committee argues that NISH has authority to "occasionally allocate[ ] orders from contracting activities (i.e., federal government agencies) among qualified JWOD nonprofit agencies," citing to 41 C.F.R. § 51-3.4 (Committee's Motion for Reconsideration at 6).  The Committee argues that this authority exists in only the limited circumstance where the Committee has designated two or more nonprofit agencies to

provide a service, and NISH has to allocate among the several agencies (*id.*). To be sure, the Committee correctly describes the role of NISH as provided in the second sentence of 41 C.F.R. § 51-3.4, which provides: "When the Committee has approved two or more nonprofit agencies to furnish a specific commodity or service, the central nonprofit agency shall distribute orders among those nonprofit agencies in a fair and equitable manner." However, the Committee's argument overlooks the provision of the first sentence of that regulation, which provides: "Central nonprofit agencies shall distribute orders from the Government only to nonprofit agencies which the Committee has approved to furnish the specific commodity or service."

This first sentence must have some meaning and provide NISH with some role, and to determine that role the Court reads the two sentences of the regulation to be in harmony with each other. If, as the Committee argues, the second sentence gives NISH the authority to "distribute orders" when two or more nonprofit agencies have been approved, the first sentence must authorize it to distribute orders to nonprofit agencies approved by the Committee when there is only one agency approved to furnish the service. As the Court stated in its Order, it finds this approval process to be what is described in the regulations at 41 C.F.R. § 51-4.2. *See* Order at 13. Thus, the Court does not read 41 C.F.R. § 51-3.4 to provide NISH with only "occasional" authority to distribute orders to participating nonprofit agencies.

In addition to its own reading of the regulations, this Court also looked to the decision in *Ballerina Pen Co. v. Kunzig,* 433 F.2d 1204 (D.C. Cir. 1970), in which the District of Columbia Court of Appeals described the division of responsibility between the

Committee and the central nonprofit agency, and stated that it was the latter entity that "distributes orders received from the Government for items on the Schedule [procurement list] among non-profits workshops [participating nonprofit agencies] . . . ." 433 F.2d at 1205. *See* Order at 14, n.2. Elsewhere, that court described the role of the central nonprofit agency as follows: "The agency (will) facilitate the equitable distribution of Government orders among the workshops and (NIB) [NISH's counterpart for the blind] is delegated the responsibility to assist the Committee to assure that these regulations and the intent of the Wagner-O'Day Act are carried out," citing to a predecessor regulation. 433 F.2d at 1209.

The Court has carefully considered the declarations of E. Robert Chamberlin, President and Chief Executive Officer of NISH, and Leon A. Wilson, Executive Director of the Committee, both attached to the motion for reconsideration. Neither declaration alters the Court's interpretation of the regulations in terms of the enumerated duties and authority as between NISH and the Commitee.

Moreover, even if 41 C.F.R. § 51-3.4 were read as the Committee now urges, to limit the role of NISH in distributing contracts in the first instance to participating nonprofit agencies, such a reading of the regulation would not change the opinion of the Court as expressed in the January 9th Order, nor would it resolve the issue in this case regarding the Committee's authority to transfer the Ft. Carson contract away from plaintiff once it had been assigned to it. For that exercise of power, the Committee relied on 41 C.F.R. § 51-2.2(b), which allows the Committee to "deauthorize" nonprofit agencies to accept orders. While none of the language appearing in 41 C.F.R. § 51-3.4 refers to

4

"authorizing" or "deauthorizing" a nonprofit agency from accepting orders, but rather refers to "approving" such agencies, the Court reads the terms "authorizing" and "approving" as synonymous, and as stated, those terms refer to the approval process described in 41 C.F.R. § 51-4.2.  Thus the Court stands by its statement at page 16 of its Order:

> Thus, while it may be true, as the Committee argues, that there are no criteria to be applied by a court in reviewing an action by the Committee to "deauthorize" a nonprofit agency from accepting orders from contracting activities because the meaning of the provision in the regulation is undefined, there is correspondingly a lack of evidence that the action taken by the Committee on June 24, 2005 comes within the power of the Committee to "deauthorize" under the regulation cited, or is otherwise supported by some power which the Committee rightfully exercises.  If, as the plaintiff argues, the Committee had no power to take the action it took by Notice dated June 24, 2005, namely to "transfer responsibility" from one qualified nonprofit agency to another, then the action cannot be deemed a "discretionary" action by a government agency, and if anything is unauthorized or an arbitrary and capricious action subject to review under the APA.

Order at 16.

Furthermore, as the Court thought it made clear in its Order, in denying the motion to dismiss it also relied on the appearance in the record of assertions by the Committee that "performance problems" and a dispute between the plaintiff nonprofit agency and Ft. Carson played a role in the termination of plaintiff's contract, and that the Committee acted under 41 C.F.R. § 51-6.15 in terminating the contract to resolve that dispute.  See Order at 17-19.  Whether or not NISH has a role in distributing contracts to participating nonprofit agencies does not affect this Court's view that

review of a termination by the Committee pursuant to 41 C.F.R. § 51-6.15 is permitted under the APA.

Accordingly, the Committee's Motion For Reconsideration (Dkt. # 95) is DENIED.

Dated: January 23, 2006

BY THE COURT:

*s/ Phillip S. Figa*

_____
Phillip S. Figa
United States District Judge